IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | Case No. 1:20-CR-181 |
| | ) | |
| FABIAN HUMBERTO TOVAR CAICEDO, | ) Count 1: | Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending and Having Reasonable Cause to Believe that it will be Unlawfully Imported into the United States (21 U.S.C. §§ 959(a), 960, 963) |
| a/k/a "Tobi," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) Forfeiture Notice: | 21 U.S.C. §§ 853 & 970 |
| | ) | |

## INDICTMENT

AUGUST 2020 TERM – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

COUNT ONE
(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing
and Intending and Having Reasonable Cause to Believe that it would be Unlawfully Imported
into the United States)

From in and around August 2017 and continuing thereafter up to and in and around April of 2018, the exact dates being unknown to the Grand Jury, within the jurisdiction of the United States and in an offense begun and committed outside the jurisdiction of a particular State or district, including in Colombia, and elsewhere, the defendant Fabian Humberto TOVAR Caicedo

(also known as "Tobi"),[1] who will be first brought to the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(a), and 963.

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The defendant and his co-conspirators, both known and unknown to the Grand Jury, comprise the Colombia-based TOVAR Drug Trafficking Organization (DTO). This DTO conspired to traffic multi-hundred and multi-thousand kilogram quantities of cocaine, valued at millions of United States Dollars, primarily to Mexico by causing such cocaine to be secreted aboard maritime vessels in the Port of Santa Marta, Colombia. These vessels transport the cocaine to Mexico.

2. The United States is the world's largest market for cocaine. Colombia is the source of the overwhelming majority of cocaine in the United States.

3. Colombian DTOs, including the TOVAR DTO, generally transport cocaine to Central America and Mexico by sea or air. Traffickers in those countries then transport the cocaine north, typically over land, into the United States.

---

[1] The defendant will be referred to herein by the portion of his name that is written here in all capitalized letters.

## WAYS, MANNERS AND MEANS OF THE CONSPIRACY

The primary purpose of this conspiracy is to make as much money as possible by trafficking cocaine from Colombia into Mexico, and ultimately into the United States. The defendant and his co-conspirators, both known and unknown, used the following ways, manners and means, among others, to carry out this purpose:

5. It was part of the conspiracy that the defendant and his co-conspirators played different roles, took upon themselves different tasks, and participated in the affairs of the conspiracy through various criminal acts.

6. It was part of the conspiracy that the TOVAR DTO obtained cocaine from sources of supply in Colombia.

7. It was further part of the conspiracy that the TOVAR DTO conducted drug-trafficking activities in the Port of Santa Marta, Colombia.

8. It was further part of the conspiracy that the TOVAR DTO caused cocaine it trafficked into the port to be smuggled aboard commercial maritime vessels.

9. It was further part of the conspiracy that the TOVAR DTO attempted to transport cocaine aboard commercial maritime vessels that launched from the Port of Santa Marta.

10. It was further part of the conspiracy that the TOVAR DTO bribed port officials and law enforcement officers at the Port of Santa Marta to ensure their cocaine would avoid interdiction.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

In order to further the goals and purposes of the conspiracy, the defendant and his co-conspirators committed overt acts, including, but not limited to, the following:

11. In and around August 2017, a coconspirator ("CC-1") solicited TOVAR's assistance in finding corrupt officials in the Port of Santa Marta to help facilitate the export of cocaine. TOVAR connected CC-1 to a corrupt official in the Port of Santa Marta. CC-1 paid TOVAR for this.

12. CC-1 continued to work with the corrupt official introduced to him by TOVAR. Eventually, they would work together and with others to introduce 2,081 kilograms of cocaine into the Port of Santa Marta. The cocaine was located inside a container purporting to contain paper. The cocaine was destined for Veracruz, Mexico, and from there it would be smuggled into the United States. The cocaine was seized by Colombian law enforcement on March 27, 2018.

13. CC-1 met with TOVAR after the seizure that occurred on March 27, 2018, to discuss how the Port inspection team had performed. CC-1 and TOVAR had planned additional shipments together using that team.

14. CC-1 and TOVAR met together on January 18, 2018, at a hotel in Bogota, Colombia. They agreed to work with a Port commander and investors supplied by TOVAR to send several shipments of cocaine out of Santa Marta to Mexico. The shipments would range in size from approximately 1,000 kilograms to up to 10,000 kilograms.

(All in violation of Title 21, United States Code, Section 963.)

# FORFEITURE NOTICE

The United States hereby gives notice to the defendant that upon conviction of the Title 21 offense alleged in Count One of this Indictment, the Government will seek forfeiture in accordance with Title 21, United States Code, Sections 853 and 970, of all property constituting or derived from any proceeds the defendant obtained directly or indirectly as the result of the alleged Title 21 violation, and all property used or intended to be used in any manner or part to commit, and to facilitate the commission of such offense.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to

//

//

//

//

//

//

seek forfeiture of any other property of the said Defendant up to the value of the above forfeitable property.

(Criminal Forfeiture, in violation of Title 21, United States Code, Sections 853 and 970.)

A TRUE BILL

Pursuant to the E-Government Act,, The original of this page has been filed under seal in the Clerk's Office

_____
Foreperson

G. Zachary Terwilliger
United States Attorney

Marlon Cobar, Acting Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By: _____
Katherine E. Rumbaugh
Assistant U.S. Attorney

By: _____
Anthony Aminoff
Trial Attorney
Special Assistant U.S. Attorney