

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FABIAN HUMBERTO TOVAR CAICEDO,<br><br>Defendant. | Case No. 1:20-cr-181 |

## STATEMENT OF FACTS

The United States and the defendant, FABIAN HUMBERTO TOVAR CAICEDO (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about August 2017 through at least in or about April 2018, in Colombia and elsewhere, the defendant did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown to unlawfully, knowingly and intentionally distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe it would be imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960, and 963.

2. It was part of the conspiracy that the defendant and his co-conspirators planned to traffic multi-thousand kilogram quantities of cocaine, valued at millions of United States dollars, to Mexico by causing such cocaine to be secreted aboard commercial shipping containers in the Port of Santa Marta, Colombia. The defendant, a sergeant in Colombian Army Intelligence, conspired to use his connections in government to facilitate the trafficking of drugs, including by finding corrupt port police willing to assist the drug trafficking organization ("DTO") in exchange for bribes. The defendant also used his connections to various drug traffickers to serve as a facilitator and connector.

3.  The defendant met co-conspirator 1, a Major in the Colombian Air Force, at a training held in the United States. The defendant later came to learn that co-conspirator 1 was involved in drug trafficking. The defendant then approached co-conspirator 1 at a meeting of Colombian military officials to offer his assistance.

4.  In approximately August of 2017, co-conspirator 1 asked the defendant if he knew of any police officials at the Port of Santa Marta who would be willing to facilitate the export of cocaine in exchange for payment. The defendant used his network in the Colombian government to find a corrupt police sergeant in the Port of Santa Marta (co-conspirator 2), and subsequently connected co-conspirator 1 to co-conspirator 2 for the purpose of facilitating the export of cocaine. Co-conspirator 2 introduced additional corrupt police to co-conspirator 1, and co-conspirator 1's DTO paid these officials to facilitate the export of 2,081 kilograms of cocaine on or about March 27, 2018. This cocaine was intended to arrive in Mexico en route to the United States but was seized in the Port of Santa Marta by Colombian law enforcement. In December of 2017, co-conspirator 1 paid the defendant for introducing him to co-conspirator 2.

5.  In addition to working to facilitate the export of cocaine for co-conspirator 1's DTO, the defendant also conspired with co-conspirator 1 and others to export their own shipments of cocaine. The defendant initially sought to export cocaine via airplane, but ultimately, the defendant decided to export cocaine via commercial shipping containers on container ships. In furtherance of this scheme, the defendant organized multiple meetings between members of port police, co-conspirator 1, cocaine logistics coordinators, investors, and others. The group negotiated payments in U.S. currency and agreed to start with 1,000 kilograms of cocaine, but stated that on a second trip they could send as many as 10,000 kilograms. The group discussed various destinations for the cocaine but ultimately decided to send it to Mexico. To facilitate the receipt of the cocaine in Mexico, a member of the drug trafficking organization traveled to Mexico to negotiate

the receipt of the cocaine with a corrupt, high-ranking Mexican military official. The defendant planned to utilize the same corrupt police in the Port of Santa Marta utilized by co-conspirator 1 for the March 27, 2018 shipment. After that shipment was seized, the defendant discussed with co-conspirator 1 how the port police performed. The defendant was also attempting to make connections with the commanders of the ports in Buenaventura and Barranquilla to be able to export cocaine from there without interference from Colombian law enforcement.

6. The defendant also offered additional corrupt services to members of the DTO in furtherance of their drug trafficking activities. The defendant offered to use his connections in the Colombian intelligence community to obtain a list of U.S. Drug Enforcement Administration ("DEA") cooperators in exchange for payment. In addition, the defendant also stated that they should obtain the same cellphones that the DEA uses for the DTO. The defendant stated he had taken a training course on how to encrypt them and could thus ensure the confidentiality of their communications.

7. The total amount of cocaine involved in this conspiracy for which the defendant is directly accountable, and for which it was reasonably foreseeable to the defendant that his co-conspirators would distribute in furtherance of the conspiracy, is in excess of four hundred and fifty (450) kilograms of cocaine. The defendant was aware that the cocaine he conspired to distribute was intended for illegal importation into Mexico en route to the United States.

8. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

9. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

10.  The defendant agrees jurisdiction and venue lie with this Court pursuant to 18 U.S.C. § 3238.

                                      Respectfully submitted,

                                      Jessica D. Aber
                                      Acting United States Attorney

Date:  January 12, 2023        By:  _____
                                      Anthony T. Aminoff
                                      Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, FABIAN HUMBERTO TOVAR CAICEDO, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____   1/12/23
FABIAN HUMBERTO TOVAR CAICEDO

I am Lana Manitta, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Lana Manitta, Esq.
Attorney for FABIAN HUMBERTO TOVAR CAICEDO