IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:20-CR-181 |
| v. | The Hon. Leonie M. Brinkema |
| FABIAN HUMBERTO TOVAR CAICEDO | Sentencing: April 18, 2023 |
| *Defendant*. | |

## <u>GOVERNMENT'S POSITION ON SENTENCING</u>

The defendant, Fabian Humberto Tovar Caicedo, comes before the Court for sentencing after pleading guilty to one count of conspiracy to distribute five kilograms or more of cocaine, knowing, intending, and having reasonable cause to believe it would be imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960 and 963. The defendant, a sergeant in Colombian Army Intelligence, conspired to send multi-thousand kilogram shipments of cocaine to Mexico for eventual importation into the United States, while also offering various corrupt services to drug traffickers that would aid their ability to evade law enforcement detection.

The United States has two objections to the Probation Officer's calculations of the defendant's Guidelines, as set forth in the Presentence Investigation Report (PSR) in paragraphs 30—41. Presentence Investigation Report (April 10, 2023) (Dkt. No. 31). The United States believes the following enhancements apply in addition to those found by the Probation officer: (1) USSG § 2D1.1(b)(11), for bribery and/or attempted bribery, and (2) USSG § 2D1.1(b)(16)(C), because the defendant received an aggravating role enhancement while being directly involved in the importation of a controlled substance. The United States agrees that the defendant has assisted

authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The Probation Officer has already accounted for this one-level decrease in its Guidelines calculation. PSR ¶ 40.

Under the Guidelines range that the United States believes should apply, the defendant would have a total offense level of 43, with a criminal history category I, which yields an advisory Guidelines range of life imprisonment. Under the Guidelines as calculated by the Probation Officer, the defendant would have a total offense level of 39, also with a criminal history category I, yielding an advisory Guidelines range of 262—327 months. PSR ¶ 67. The United States would ordinarily submit that a sentence in the Guidelines range is appropriate. Nevertheless, to avoid an unwarranted sentencing disparity with similar cases, the United States respectfully submits that a sentence of 144 months appropriately accounts for the Section 3553(a) factors.

## BACKGROUND

The defendant was a sergeant in Colombian Army Intelligence who organized a DTO that conspired to send multi-thousand kilogram shipments of cocaine from Colombia to Mexico for eventual importation into the United States. Statement of Facts ¶ 2 (Jan. 12, 2023) (Dkt. No. 28) (hereinafter, "SOF"). The defendant initially began working with Fabian Andres Leyton Vargas (identified as co-conspirator 1 in the SOF) in approximately August of 2017 to find corrupt police in the Port of Santa Marta.[1] SOF ¶ 4. He successfully connected Leyton Vargas to a sergeant in the Port of Santa Marta, who introduced additional corrupt police to Leyton Vargas. *Id.* Leyton

---

[1] Leyton Vargas pled guilty to conspiracy to distribute 5 kilograms or more of cocaine, knowing, intending, or having reasonable cause to believe the cocaine would be unlawfully imported into the United States on July 19, 2019. *United States v. Avila Acevedo et al.*, No. 1:18-cr-74 (E.D. Va.).

2

Vargas paid these police officials to facilitate the export of 2,081 kilograms of cocaine from Colombia to Mexico. *Id.* The defendant was paid for introducing Leyton Vargas to the corrupt police sergeant. *Id.*

The defendant also worked to establish his own DTO with Leyton Vargas to export their own shipments of cocaine. SOF ¶ 5. The defendant organized multiple meetings in furtherance of this scheme, wherein the group negotiated payments in U.S. currency and agreed to start with 1,000 kilograms of cocaine, but stated that on a second trip they could send as many as 10,000 kilograms of cocaine. *Id.* The cocaine was to be sent to Mexico, and a member of the DTO was dispatched to Mexico to negotiate the receipt of the cocaine with a corrupt, high-ranking Mexican military official. *Id.* The defendant planned to utilize the same corrupt police in the Port of Santa Marta utilized by Leyton Vargas for the 2,081 kilogram shipment referenced above, and was also attempting to make connections with police in the ports of Buenaventura and Barranquilla. *Id.*

The defendant also offered additional corrupt services to members of the DTO in furtherance of their drug trafficking activities. SOF ¶ 6. The defendant offered to use his connections in the Colombian intelligence community to obtain a list of DEA cooperators in exchange for payment. *Id.* In addition, the defendant also stated that they should obtain the same cellphones that the DEA uses for the DTO. *Id.* The defendant stated he had taken a training course on how to encrypt them and could thus ensure the confidentiality of their communications. *Id.*

**SENTENCING ANALYSIS**

I.    **Law**

The Court consults both the Sentencing Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account

when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution. 18 U.S.C. § 3553(a).

## II.     Guidelines Calculation

The Probation Officer has calculated an adjusted offense level of 39 and criminal history category I for the defendant. PSR ¶¶ 66, 67. The base offense level is 38 based on the quantity of cocaine involved in the offense. PSR ¶ 31. The parties stipulated in the plea agreement that two points should be added to the offense level pursuant to U.S.S.G. § 3B1.1 because the defendant was an organizer, leader, manager, or supervisor. *See* PSR ¶¶ 5, 35.

4

The government believes the Court should apply a two-point enhancement, pursuant to USSG § 2D1.1(b)(16)(C), because the defendant, who has stipulated to an adjustment under § 3B1.1, was directly involved in the importation of a controlled substance. As acknowledged in the Statement of Facts, "the defendant was aware that the cocaine he conspired to distribute was intended for illegal importation into Mexico en route to the United States." SOF ¶ 7. The fact that the DTO was unsuccessful in importing the cocaine into Mexico, and ultimately into the United States, does not bar the application of this enhancement. In general, the offense level for the crimes of conspiracy and attempt is "[t]he base offense level from the guideline for the substantive offense, *plus any adjustments from such guideline for any intended offense conduct* that can be established with reasonable certainty." USSG § 2X1.1(a) (emphasis added). The heading of §2D1.1 confirms that the adjustments located therein apply to not only substantive drug offenses, but also to attempt and conspiracy offenses. U.S.S.G. § 2D1.1. Other Circuits have applied similar enhancements even when there is no actual importation. In *United States v. Rendon*, the 11th Circuit upheld the application of a 2-point enhancement, pursuant to § 2D1.1(b)(3),[2] where the defendant was the captain of a boat carrying cocaine that was stopped in international waters by the U.S. Coast Guard. 354 F.3d 1320 (11th Cir. 2020). The Court held that there was sufficient evidence that the defendant conspired to unlawfully import a controlled substance for purposes of applying the relevant sentencing enhancement, and noted that it did not matter that his go-fast boat was stopped before the actual importation was completed. *Id.* at 1330. *See also United States v.*

---

[2] The case refers to a prior version of the USSG wherein the enhancement was listed under § 2D1.1(b)(2). The enhancement described in the opinion is currently listed in 2D1.1(b)(3). In pertinent part, the enhancement at issue in *Rendon* states, "If the defendant unlawfully imported … a controlled substance under circumstances in which … the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by 2 levels."

*Rodriguez*, 215 F.3d 110 (1st Cir. 2000) (categorizing defendant's argument as "frivolous" for asserting enhancement did not apply unless actual transportation of drugs occurred). Furthermore, the fact that the defendant was not physically importing the cocaine himself into the United States does not bar the application of this enhancement. *See United States v. Romero*, 904 F.3d 238, 243 (2d Cir. 2018) (applying enhancement where defendant participated directly in transporting hundreds of kilograms of cocaine from South America through Honduras for Mexican drug cartels to smuggle into the United States). Therefore, because the defendant served as an organizer, leader, manager, or supervisor in a conspiracy to distribute multi-thousand kilogram loads of cocaine from Colombia to Mexico, that he intended for eventual importation into the United States, a two point enhancement is merited.

The government further believes the Court should apply a two point enhancement, pursuant to USSG § 2D1.1(b)(11), which applies "[i]f the defendant bribed, or attempted to bribe, a law enforcement officer to facilitate the commission of the offense." USSG 2D1.1(b)(11). In the Statement of Facts, the defendant acknowledges that "co-conspirator 1 [Leyton Vargas] asked the defendant if he knew of any police officials at the Port of Santa Marta who would be willing to facilitate the export of cocaine in exchange for payment. The defendant used his network in the Colombian government to find a corrupt police sergeant in the Port of Santa Marta (co-conspirator 2), and subsequently connected co-conspirator 1 [Leyton Vargas] to co-conspirator 2 for the purpose of facilitating the export of cocaine." SOF ¶ 4. The defendant thus aided, abetted, induced, procured, and willfully caused a bribe payment to be made by Leyton Vargas to co-conspirator 2. *See* USSG §1B1.3(a)(1)(A). The defendant further admits that he "planned to utilize the same corrupt police in the Port of Santa Marta utilized by co-conspirator 1 [Leyton Vargas]," that he "discussed with co-conspirator 1 [Leyton Vargas] how the port police performed," and that he was

6

"attempting to make connections with the commanders of the ports of Buenaventura and Barranquilla to be able to export cocaine." SOF ¶ 5. All of which indicates that the defendant himself was intending to personally bribe law enforcement officers as well. Therefore, the Court should apply the two point enhancement pursuant to §2D1.1(b)(11).

Lastly, the government agrees with probation's assessment of an additional two point enhancement, pursuant to USSG § 3B1.3, for the abuse of a position of trust. The defendant was serving as a sergeant in Colombian Army Intelligence during the time period of the conspiracy. He used "his network in the Colombian government to find a corrupt police sergeant in the Port of Santa Marta," he offered "to use his connections in the Colombian intelligence community to obtain a list of DEA cooperators," and he used his knowledge of the DEA and his professional training to suggest obtaining a particular type of phone that he could encrypt. SOF ¶¶ 4, 6. All of these things contributed significantly to advancing the conspiracy's objectives. Finding corrupt police in the ports was essential to exporting the cocaine via commercial shipping containers. A list of DEA cooperators and ensuring encrypted communications would serve to significantly embolden a DTO by making them believe they were less likely to be caught by law enforcement. As a result, the defendant's abuse of his official position significantly facilitated the commission of the charged offense, and a two level enhancement is warranted.

The government also concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), and in accordance with the plea agreement, hereby moves for the additional one-point reduction under USSG § 3E1.1(b).

Under the government's calculation, the defendant's total offense level of 43 and criminal history category I yields an advisory Guidelines range of life imprisonment. Under the Probation

Officer's calculation, the defendant's total offense level of 39 and criminal history category I yields an advisory Guidelines range of 262—327 months. PSR ¶ 66—67.

## III.   Section 3553(a) Analysis

### a.   Nature, circumstances, and seriousness of the offense

The defendant engaged in a serious offense meriting a considerable period of incarceration. The distribution of vast amounts of cocaine—such as the multi-thousand kilogram loads the defendant conspired to distribute—causes profound damage to society. Cocaine usage (including crack-cocaine usage) destroys lives and families. It can lead to addiction, long-term adverse health effects, and even death by overdosing.[3]

The costs that society incurs in dealing with the effects of these illegal narcotics are enormous, including the costs associated with law enforcement. As part of those costs, the United States has given billions of dollars in aid to Colombia to fight the cocaine trade, with much of the money going to train Colombia's military and police.[4] The defendant himself received military training in the United States. At some point in his professional career, he learned how to encrypt telephones, a skill which he offered to use to benefit his DTO. He also facilitated the corruption of other members of the Colombian police, further weakening the force that the United States has paid heavily to build up. Such corruption strikes at the heart of the ability of the government of Colombia to tackle the transnational supply of illegal drugs, as well as at the United States' overarching strategy to combat transnational organized crime.

---

[3] *See* Nat'l Inst. on Drug Abuse, DrugFacts: Cocaine (July 2018), *available at* https://www.drugabuse.gov/publications/drugfacts/cocaine (last visited April 7, 2023).

[4] Megan Alpert, *15 Years and $10 Billion Later, U.S. Efforts to Curb Colombia's Cocaine Trade Have Failed*, FOREIGN POLICY, Feb. 8, 2016, *available at* https://foreignpolicy.com/2016/02/08/15-years-and-10-billion-later-u-s-efforts-to-curb-colombias-cocaine-trade-have-failed/ (last visited April 7, 2023).

The defendant also offered to provide a list of DEA cooperators to drug traffickers. If law enforcement hadn't arrested co-conspirators shortly after the failed March 27, 2018 shipment, and if the defendant had provided the list of DEA cooperators as offered, the defendant would have placed those individuals at severe risk of loss of life.

Because of the vast quantities that the defendant conspired to distribute, the corrosive effect his actions had on a vital partner's institutions, and the potential for loss of life given his actions, this is a highly serious offense meriting a significant sanction.

      b.  <u>Need for general deterrence</u>

Colombia produces about 90% of the cocaine powder reaching the United States.[5] The United Nations Office on Drugs and Crime found that by the end of 2017, more land in Colombia was used to cultivate coca—the plant from which cocaine is derived—than ever in the country's history, translating into a huge increase in capacity for the production of cocaine hydrochloride.[6] This case illustrates the large quantities of cocaine that drug trafficking organizations are capable of procuring. The sentence imposed on this defendant should send a clear message of deterrence to those who would seek to get involved in transporting wholesale quantities of cocaine out of Colombia.

---

[5] United States Drug Enforcement Administration, *Drugs of Abuse: A DEA Resource Guide* (2017 Edition) at 51, *available at* https://www.dea.gov/sites/default/files/sites/getsmartaboutdrugs.com/files/publications/DoA_20 17Ed_Updated_6.16.17.pdf (last accessed April 7, 2023).

[6] United Nations Office on Drugs and Crime, *Coca Crops in Colombia at all-time high, UNODC Report finds*, *available at* https://www.unodc.org/unodc/en/frontpage/2018/September/coca-crops-in-colombia-at-all-time-high--unodc-report-finds.html?ref=fs1 (last accessed April 7, 2023).

Such a message is particularly necessary to Colombian public officials—especially those tasked with maintaining public safety—that might consider engaging in the drug trade. A significant sanction would make clear that corruption comes with consequences.

    c.   Need to avoid unwarranted sentence disparities

The Court sentenced three members in a related case in 2019. *See United States v. Avila Acevedo et al,* No. 1:18-cr-74 (E.D. Va.). In that case, one defendant, Fabian Humberto Leyton Vargas, was an active member of the Colombian Air Force who also targeted and recruited port police to facilitate the DTO's drug trafficking efforts. The Court sentenced Leyton Vargas to 144 months of imprisonment.

The Court also sentenced another similarly situated defendant arising out of the same investigation targeting corruption in Colombia's ports in 2022. *See United States v. Jose Maria Fragoso D'Acunti*, No. 1:19-cr-282 (E.D. Va.). In that case, Fragoso D'Acunti used his former position in the Colombian Police Department, along with familial and other connections, to identify and bribe security and law enforcement officials in the Port of Cartagena to aid his drug trafficking organization's ability to ship cocaine. On April 1, 2022, the Court sentenced Fragoso D'Acunti to 144 months of imprisonment.

Because of the similarities between the cases referenced above, the government believes 144 months is also appropriate here.

## CONCLUSION

Accordingly, the United States submits that a term of imprisonment of 144 months is sufficient but not greater than necessary to satisfy the sentencing factors under Section 3553. The defendant was an educated man who spent a career working for Colombian military intelligence, but who succumbed to the lure of profit through cocaine trafficking. Ultimately, the seriousness of

this crime, the need to prevent this specific defendant from committing further crime, and the general need to deter this type of criminal activity, warrant a sentence of a significant term of imprisonment.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      /s/
         Anthony T. Aminoff
         Assistant United States Attorney
         United States Attorney's Office
         Eastern District of Virginia
         2100 Jamieson Avenue
         Alexandria, VA 22314
         Telephone (703) 299-3790
         Facsimile (703) 299-3980
         Anthony.aminoff@usdoj.gov

         Marlon Cobar
         Acting Chief
         Narcotic and Dangerous Drug Section
         Criminal Division
         U.S. Department of Justice

         Douglas Meisel
         Janet Turnbull
         Trial Attorneys
         Narcotic and Dangerous Drug Section
         Criminal Division, U.S. Department of Justice
         145 N Street, N.E., Washington, D.C. 20530
         (202) 305-4243

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

                                                        _____/s/_____

Anthony T. Aminoff
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone (703) 299-3790
Facsimile (703) 299-3980
Anthony.aminoff@usdoj.gov